UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEITH STANLEY BROWN,          :
                              :
          Plaintiff           : No. 4:CV-10-1129
                              :
     vs.                      : (Complaint Filed 05/25/10)
                              :
                              : (Judge Muir)
JEFFREY BEARD, <u>et</u> <u>al</u>.,      :
                              :
          Defendants          :

<u>**MEMORANDUM AND ORDER**</u>

March 3, 2011

<u>**Background**</u>

Plaintiff, Keith Stanley Brown, an inmate confined in the
State Correctional Institution, Huntingdon, ("SCI-Huntingdon"),
Pennsylvania, filed the above civil rights action pursuant to
42 U.S.C. § 1983. The named defendants are Jeffrey Beard,
Secretary, Department of Corrections ("DOC"); Richard Ellers,
DOC Director of Health Care Services; Raymond Lawler, SCI-
Huntingdon Superintendent; Brian Corbin, SCI-Huntingdon Deputy
Superintendent; Marylou Showalter, SCI-Huntingdon Health Care
Administrator; and Phillip Shoaf, M.D, Harry Poland, P.A. and
Christi Riscigno, P.A., medical providers contracted to provide
treatment to inmates at SCI-Huntingdon.

Presently before the court and ripe for disposition are defendants' motions to dismiss the plaintiff's complaint (docs. 13, 39), and plaintiff's motions for a  preliminary injunction and temporary restraining order (see docs. 4, 26, 38,59, 67), seeking an Order of Court directing defendants to allow plaintiff to have Dr. McGee perform the recommended surgery at Altoona Hospital. The parties have fully briefed the issues and the motions are  now ripe for disposition.  For the reasons that follow, defendants' motions to dismiss will be granted and plaintiff's motions for injunctive relief will be denied.

## I.  **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim,"

2

Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" <u>Id</u>., 127 S.Ct. at 1965 (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." <u>Capogrosso v. The Supreme Court of New Jersey</u>, 588 F.3d 180, 184 (3d Cir.2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." <u>Fowler</u>, <u>supra</u>, 578 F.3d at 210. First, we separate the factual elements from the legal elements and

disregard the legal conclusions. <u>Id</u>. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a " 'plausible claim for relief.' " <u>Id</u>. at 211 (quoted case omitted).

In addition, because plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. <u>See</u>, <u>e.g.</u>, <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126 n. 6 (9th Cir.2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. <u>See</u> <u>Lopez</u>; <u>Dare v. U.S.</u>, Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd,264 FedAppx. 183 (3d Cir.2008).

## II. **Allegations in Complaint**

Plaintiff alleges that in "November 2008, when entering SCI-Huntingdon, [he] signed up for sick call [to] complain about his umbilical hernia." (Doc. 1, complaint). Plaintiff was seen by Dr. Shoaf and P.A. Poland. Id. He told them that he was "suffering and experiencing excruciating pain, physical and emotional, which effect his daily activity." Id.

On or about July 15, 2009, Brown states that the defendants "referred [him] to Altoona Hospital to see Hernia Specialist Dr. McGee" and that "Dr. McGee recommend[ed] the plaintiff surgery." Id.

When plaintiff returned from Altoona Hospital, he "explained to all defendants in this complaint that Dr. McGee recommended surgery for him on his hernia." Id. He claims that Dr. Shoaf "informed the plaintiff that he is not getting surgery because the prison has a budget and it's up to Marylou Showalter." Id. Plaintiff states that this is contrary to DOC policy which states that "if an inmate need medical care the DOC will be responsible to provide it." Id.

After his visit to the Altoona Hospital, plaintiff "constantly complain[ed] on sick call about his hernia causing

pain" and was referred to Dr. Shoaf "numerous times." <u>Id</u>.
Plaintiff states that "everytime Dr. Shoaf examined plaintiff
and he informed [him] he was suffering from pain, [Shoaf] never
prescribed him adequate pain medicine at all." <u>Id</u>.

On November 9, 2009, Chief Grievance Officer Dorina Varner
issued a Final Appeal Decision to Brown's Grievance No. 284889,
finding the following:

> The issue regarding your hernia concern was referred
> to the Bureau of Health Care Services for their
> review. The Bureau found that the medical care
> provided by the medical department at SCI-Huntingdon
> has been reasonable and appropriate. The record
> reflects that a hernia surgery is completed only if
> the hernia is incarcerated.[1] Your hernia is reducible
> at this time. The Bureau found no evidence of neglect
> or deliberate indifference by the medical staff at
> SCI-Huntingdon. A request for monetary damages is
> unwarranted and therefore denied.

(Doc. 1, complaint, Ex. A, Final Appeal Decision).

On December 21, 2009, Dr. Shoaf prescribed an "abdominal
binder," which plaintiff states he "cannot have it in the RHU"
because Dr. Shoaf says "it's a security risk." (Doc. 1,
complaint).

---

1. An "incarcerated" hernia is an irreducible hernia: a hernia
that cannot be corrected by simple non-surgical manipulation.

6

On December 23, 2009, defendant Richard Ellers, Director of Health Care Services responded to a letter from Brown with the following:

> This is in response to your recent letter regarding your medical care at SCI-Huntingdon. Your concerns regarding the medical treatment regarding your umbilical hernia was reviewed by staff at the Bureau of Health Care Services. It has been determined that the care being provided to you by the staff at SCI-Huntingdon is medically appropriate.
>
> The Pennsylvania Department of Corrections provides medical services to inmates that are consistent with community standards. The DOC contracts with vendors who employ credentialed, licensed physicians and physician assistants who are responsible for the assessment, treatment and follow-up of all inmate medical conditions. Access to outside specialists and appropriate medical facilities is also provided through the vendors.
>
> The medical staff at SCI-Huntingdon will continue to address your health care concerns and assess and appropriately treat every medical condition identified. Please direct your future questions and concerns to Dr. Shoaf, Medical Director and Ms. Showalter, Corrections Health Care Administrator. The grievance process is available to you if you are not satisfied with their responses.

(Doc. 1, complaint, Ex. D, letter).

On January 29, 2010, plaintiff was again examined by Dr. Shoaf. (Doc. 1, complaint). Plaintiff reported that he was in "excruciating pain that has been effecting his daily activity."

Id. Dr. Shoaf "felt [plaintiff's] stomach and said he can go back to his cell." Id.

On February 12, 2010, Brown received a follow-up letter from Jay Whitesel, Special Assistant to Secretary Beard, stating the following:

> During Secretary Beard's recent visit to SCI-Huntingdon, you expressed concern that the medical staff is not properly addressing your medical concerns as they relate to your hernia.
>
> Upon investigating your concerns I noted that you filed grievance number 284889 addressing this same issue. The response you received was that it was the opinion of the medical professionals that your hernia was reducible and did not meet the criteria for surgery. You were advised that your hernia would be clinically monitored and the recommendation would be re-examined if necessary.
>
> I contacted the medical professionals at SCI-Huntingdon and they assured me that your hernia was still reducible and is monitored on a frequent basis. You are still not a candidate for surgery. I recommend that you follow the advice of the professionals who are providing you appropriate medical care.

(Doc. 1, complaint, Ex. C, Follow-up letter).

Plaintiff claims that on April 22 and April 23, 2010, defendant Poland stated that he had listed plaintiff for sick call; however, "when Dr. Shoaf appear[ed] he refused to call

upon [plaintiff]" and plaintiff "watch[ed] him come to the unit and leave." Id.

On April 29, 2010, Dr. Shoaf again examined Brown and "explain[ed] why [he] has pain from hernia and what is the appropriate measure a medical staff are suppose to take when a person is in pain from a hernia umbilical." Id.

On May 25, 2010, Brown filed the instant action in which he claims that his hernia "constantly protrudes out his navel area daily when talking, coughing, laughing movement which effect his daily activity" as reported to "Dr. Shoaf, Harry Poland and Christi Riscigno." He claims that "each defendant is going on what Dr. Shoaf said that [plaintiff's] hernia is reducible because he is the D.O.C. doctor" and that "each defendant was informed that Dr. McGee recommend[ed] surgery for Brown's hernia." Id. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief, for defendants' alleged conspiratorial actions to violate his Eighth and Fourteenth Amendments. Id.

III.    **Discussion**

    A.    **Eighth Amendment Medical Claim**

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." <u>Natale v. Camden Cty. Correctional Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003). <u>See also</u> <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837

(1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he

or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff

with some type of treatment, regardless of whether it is what the plaintiff desires. <u>Farmer v. Carlson</u>, 685 F. Supp. at 1339.

The allegations in plaintiff's complaint, as well as the extensive documentation submitted in support of his complaint, clearly demonstrate that plaintiff has received medical attention, as well as medical accommodations for his hernia, and that the attention plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff was seen by medical personnel and treated with pain medication as well as an abdominal binder for his hernia. Additionally, plaintiff's reducible hernia is continually monitored for change.

At best, plaintiff's complaint demonstrates his disagreement with medical personnel for not accepting Dr. McGee's recommendation that plaintiff be operated on for his hernia. Plaintiff's disagreement with Dr. Shoaf and the other medical defendants, however, does not serve as a predicate to liability under § 1983. <u>See</u>, <u>White v. Napoleon</u>, 897 F.2d at 108-110 (3d Cir. 1990)(No deliberate indifference claim is stated when a doctor disagrees with the professional judgment

of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979)(claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). This is particularly so in light of the fact that there are no allegations in the complaint that any of the defendants intentionally withheld medical treatment from plaintiff in order to inflict pain or harm upon plaintiff. <u>Farmer</u>; <u>Rouse</u>. Thus, the allegations in the plaintiff's complaint amount to nothing more than plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not serve as a predicate to liability under § 1983, <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), plaintiff's civil rights complaint fails to articulate an arguable claim. <u>See</u> <u>White</u>, 897 F.2d at 108-110.

## B. <u>Claims against various Defendants</u>

Defendants argue that plaintiff fails to state a claim against defendants Beard, Lawler and Corbin because the

14

complaint reveals that they lack any personal involvement in the wrongs, and plaintiff's allegations against these defendants are based solely upon their supervisory roles. (Doc. 14, at 5-6). The Court agrees.

Local government units and supervisors typically are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing Rode). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d

Cir.1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d

Cir.1995).  As explained in Rode:

> A defendant in a civil rights action must have
> personal involvement in the alleged wrongs. . . .
> [P]ersonal involvement can be shown through
> allegations of personal direction or of actual
> knowledge and acquiescence.  Allegations of
> participation or actual knowledge and acquiescence,
> however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

A § 1983 action brought against a person in his or her

official capacity "generally represent[s] only another way of

pleading an action against an entity of which an officer is an

agent."  Monell, 436 U.S. at 690 n. 55.  "[I]n an

official-capacity action, ... a governmental entity is liable

under § 1983 only when the entity itself is a 'moving force'

behind the deprivation; thus, in an official capacity suit the

entity's 'policy or custom' must have played a part in the

violation of federal law."  Kentucky v. Graham, 473 U.S. 159,

166 (1985) (internal quotation marks and citations omitted).

Based on the allegations contained in plaintiff's

complaint, it is apparent that he is relying solely upon a

theory of respondeat superior as to defendants Beard, Lawler

and Corbin.  Specifically, plaintiff alleges that defendant

Beard is "a policy maker and is responsible for [plaintiff's] health care and ultimately responsible for the training and supervision of his employees" and that defendant Lawler is "the warden of SCI-Huntingdon and is responsible for [plaintiff's] health care and for the operations and management of SCI-Huntingdon and is ultimately responsible for the training and supervision of his employees." (Doc. 1, complaint). Likewise, with respect to defendant Corbin, plaintiff states that he is "the Deputy Warden who is in charge of SCI-Huntingdon medical dept. employees" and is "also responsible for [plaintiff's] health." Id.

The plaintiff does not allege that any of these named defendants were personally involved in violating plaintiff's constitutional rights. Thus, it is clear that plaintiff is attempting to hold these defendants liable based solely upon their positions, and as such, his complaint should be dismissed as to defendants Beard, Lawler and Corbin.

### C. Fourteenth Amendment Equal Protection claim

To the extent that Brown may be attempting to pursue an equal protection claim by asserting that he is "incarcerated with other inmate who had a hernia whom was allow to receive

17

operation when outside specialist ordered it we are 'similarly situated' but [plaintiff] was treated differently by private actor and state actor which [plaintiff] is a member of a protected class and was treated differently from similarly situated person outside of his protected class; which the resultant was to deprive [plaintiff] from [his] 8th Amendment right to adequate medical care" (doc. 52, brief in opposition), his pleading is lacking in important ways.

It is well-settled that a litigant in order to establish a viable equal protection claim must show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8 (1944); Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986); E & T Realty v. Strickland, 830 F.2d 1107, 1113-14 (11th Cir. 1987), cert. denied, 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights and (3) classifications based on social or economic factors. See, e.g., Britton v. City of Erie, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), aff'd,

100 F.3d 946 (3d Cir. 1996); <u>Adams v. McAllister</u>, 798 F. Supp. 242, 245 (M.D. Pa.), <u>aff'd</u>, 972 F.2d 1330 (3d Cir. 1992).

Plaintiff, however, fails to allege who is similarly situated to him and treated differently, or how he has been treated differently than other similarly situated inmates. Additionally, he has failed to allege facts from which it can be concluded that the defendants engaged in intentional or purposeful discrimination. Consequently, his equal protection claim fails because his complaint is devoid of any allegation that he was treated differently from other similarly situated inmates with a reducible hernia. Accordingly, the defendants' motions to dismiss will be granted.

**D.  <u>Preliminary Injunction and Temporary Restraining Order</u>**

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. <u>See</u> <u>American Tel. and Tel. Co. V. Winback and Conserve Program, Inc.</u>, 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 US. 1103 (1995). Moreover, issuance of such relief is at the discretion of the trial judge. <u>Orson, Inc. v. Miramax Film</u>, Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993). In determining whether to grant

a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors:

(1) likelihood of success on the merits;
(2) irreparable harm resulting from a denial of relief;
(3) the harm to the non-moving party if relief is granted; and
(4) the public interest.

United States v. Bell, Civ. No. 1:CV-01-2159, 2003 WL 102610, *2 (M.D. Pa. January 10, 2003)(J. Conner)(internal citations omitted). It is the moving party that bears the burden of satisfying these factors. Id. The standards for a temporary restraining order are the same as those for a preliminary injunction. Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994). Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. See Continental Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 356 (3d Cir. 1980). Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial ." Instant Air Freight, 882 F.2d at 801. A court may not grant preliminary injunctive

relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." <u>Id</u>. The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunctive relief is to be issued. <u>Id</u>. Speculative injury does not constitute a showing of irreparable harm. <u>Continental</u>, 614 F.2d at 359; <u>see also</u> <u>Public Serv. Co. v. West Newbury</u>, 835 F.2d 380, 383 (1st Cir. 1987). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." <u>Instant Air Freight</u>, 882 F.2d at 801 (quoting <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1964)).

Based on plaintiff's failure to prevail on the merits of the instant civil rights action, plaintiff's motions for a preliminary injunction (Docs. 4, 26, 38,59, 67) will be denied.

An appropriate Order accompanies this Memorandum Opinion.

s/Malcolm Muir
MUIR
United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEITH STANLEY BROWN,           :
                               :
          Plaintiff            : No. 4:CV-10-1129
                               :
     vs.                       : (Complaint Filed 05/25/10)
                               :
                               : (Judge Muir)
JEFFREY BEARD, <u>et</u> <u>al</u>.,    :
                               :
          Defendants           :

## <u>ORDER</u>

March 3, 2011

For the reasons set forth in the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1.   The defendants' motions to dismiss (Docs.13, 39) are **GRANTED.**

2.   Plaintiff's motion for a preliminary injunction and temporary restraining order (Docs. 4, 26, 38, 59, 67) are **DENIED.**

3.   Plaintiff's motions for leave to file an amended complaint (Docs. 27, 30) and motion "to enforce further relief" (Doc. 88) are deemed withdrawn for failure to file a supporting brief. <u>See</u> M.D. Pa. Local Rule 7.5.

4.   Plaintiff's motion to appoint counsel (Doc. 23) and motion to compel a copy of his medical record in order to locate Dr.

McGee's recommendation (Doc. 46) are **DISMISSED** as moot.

5. Defendants' motions to stay discovery (Docs. 33, 45) are **DISMISSED** as moot.

6. Plaintiff's motions for an examination pursuant to Fed.R.Civ.P. 35(a), (Docs. 57, 69) are **DENIED**.

7. The Clerk of Court shall **CLOSE** this case.

8. Any appeal from this order will be deemed frivolous, without probable cause, and not taken in good faith.


s/Malcolm Muir
MUIR
United States District Judge